C. G. HIPWELL, Appellee v. THE NATIONAL SURETY COMPANY of New York City; THE CITY OF FT. DODGE and THE COMMERCIAL NATIONAL BANK of Ft. Dodge, Ia., Appellants; and A. H. NORTHRUP, WEBB VINCENT, G. S. RINGLAND, O. M. OLESON, LEON VINCENT, THE FORT DODGE MANUFACTURING Co., N. AALFS, FORT DODGE LUMBER Co. of the CITIZENS LUMBER Co., H. S. VINCENT, NORTHERN BUILDING Co., of Davenport, Ia., and S. J. BENNETT and R. SHISLER, PLEASANT VALLEY COAL Co., J. A. CULLEN, E. C. WAKEFIELD and HARRY EWING, interveners, Appellees.

**Contractor's bond:** BREACH: ACTION. Under Code Section 3467
1 an action may be brought on a bond, in the name of any person injured by a breach of its conditions, where the same

was intended as security of the public generally, or of particular individuals.

**Same.** Where the contract for the erection of a public building provided that the contractor should pay promptly for all labor and material used in the construction of the same, and his bond was conditioned on compliance with all the terms and conditions of the contract, failure of the contractor to pay subcontractors was a breach of the bond entitling the subcontractors to sue thereon; notwithstanding another provision of the contract that no persons except those named therein should have any share in or benefit arising therefrom.

**Equitable assignments:** ORDERS. An order for the payment of a specific sum out of a larger fund due the maker, operates as an equitable assignment of the fund to that extent, but the non-negotiable order of a contractor to pay a specific sum out of a fund yet to be earned amounts to no more than a transfer of such interest as the maker then had or might thereafter acquire in such fund. The order and acceptance in the instant case is held to constitute a transfer merely of the maker's interest in the fund.

**Contracts:** ASSIGNMENT OF EARNINGS: RELEASE OF SURETY. The acceptance of a contractor's order to pay a portion of the price to another, on completion and acceptance of the work, did not amount to a present payment, in violation of the contract providing that a portion of the price should be withheld until completion and acceptance of the work, thus relieving the sureties on the contractor's bond; nor did it violate a provision of the contract forbidding its assignment, as such prohibition related to the obligation to do the work and not to the earnings.

**Subrogation:** RIGHTS OF SURETY. Where a builder's contract provided for prompt payment of labor and material and a retention of a portion of the contract price until completion and acceptance of the work, and his bond was conditioned upon faithful performance of the contract, his surety could not claim the fund so retained upon being compelled to pay liens against the property, as against one holding the contractor's order which was accepted for payment out of funds due him on completion and acceptance of the work.

**Rights of subcontractors.** Where a building contract provided for prompt payment of labor and material and the bond secured faithful performance of the contract, subcontractors were not limited to a recovery of funds due the contractor, but could rely on the security offered by the bond.

Construction of public building: BREACH OF CONTRACT: DAMAGES.
7 Damages for failure to complete a public library under a con-
tract made with a committee acting for the city may be re-
covered by the city, and the measure of its damage is the
rental value of the building during the period of delay, and
not the cost to the city of other rooms for library purposes.

*Appeal from Webster District Court.*— HON. W. D. EVANS,
Judge.

SATURDAY, DECEMBER 16, 1905.

Rehearing denied Thursday, May 24, 1906.

THE council of the city of Ft. Dodge ·by resolution
adopted January 28, 1901, appointed a committee of its
citizens, consisting of the mayor, S. J. Bennett, and his
successors in office, George S. Ringland, O. M. Oleson, Webb
Vincent, and Leon Vincent, for and in behalf of the city,
" to take charge of the ·construction of the Public Library
in the said city, for which a site has been conveyed to the
said city, and the said committee is empowered and di-
rected to do all things necessary and proper in the selection
of plans for the said building, and shall have exclusive
charge and control of the selection of said plans and the con-
struction of said building; and shall expend all moneys con-
tributed for the construction of said building, and are em-
powered and directed to receipt to all parties who, may con-
tribute moneys for the construction of the said library build-
ing, for and in the name of the said city. The said com-
mittee, as named, is given full and ample authority to rep-
resent the said city in the construction of the said building,
and in receipting for any moneys contributed therefor, and
this resolution shall be ample authority for the acts of the
said committee done thereunder." This committee entered
into a contract with the Northern Building Company of
Davenport, Iowa, June 17, 1901, by the terms of which that
company undertook " to furnish all the labor and materials

and do and perform all the work required for the erection and inclosing of the Library Building at Ft. Dodge, Iowa, according to the specifications and plans," the same to be completed before January 1, 1902.   The contract price was $34,500, but there were additions aggregating to $215.94 and deductions amounting to $1,271.   The company was paid $26,584.20 before it abandoned the work and the committee expended $4,046.28 in completing the building, which was not accomplished until August 15, 1903.   From the money on hand the court ordered that five claimants who had complied with section 3102 of the Code be paid in full sums amounting to $1,214.27, and the remainder, $1,600.27, to the Commercial National Bank of Ft. Dodge on an order of the building company.   Three other claims amounting to $835.47 were established against the building company, and judgments entered against it and the surety company.   Judgment was also entered against the contractor and the surety company for $2,417.26, in favor of C. G. Hipwell for labor and materials.   The claims of E. C. Wakefield and of the city of Ft. Dodge were rejected. Affirmative relief demanded by the surety company was denied.   The city of Ft. Dodge, the Commercial National Bank, and the National Surety Company appeal.— *Affirmed.*

*Mitchell & Hackler* and *Lane & Waterman,* for appellant National Surety Co.

*M. J. Mitchell,* for appellant city of Ft. Dodge.

*Wright & Nugent,* for appellant Commercial Nat. Bank.

*Healy Bros. & Kelleher, A. N. Botsford, James Martin,* and *F. A. Grosenbaugh,* for appellees.

LADD, J.— Judgment was entered in favor of all the subcontractors against the National Surety Company of

New York, and it contends this was error, in that the bond executed by it was not intended for their benefit, and expressly excluded them therefrom. The agreement between the committee and the contractor, as well as the bond executed by the contractor and the National Surety Company, recited that the committee had been appointed by the City of Ft. Dodge, that the library was being constructed for the city, and, in the contract, that the committee was acting for and in behalf of the city. In effect, then, the agreement was with, and obligation executed to, the municipality of Ft. Dodge. Section 3467 of the Code provides that: " When a bond or other instrument given to the state or county or other municipal or school corporation, or to any officer or person is intended for the security of the public generally, or of particular individuals action may be brought thereon in the name of any person intended to be thus secured, who has sustained an injury in consequence of a breach thereof, except when otherwise provided." If, then, this bond was intended as security for these particular individuals action may be maintained thereon in the name of any of those intended.

1. CONTRACTOR'S BOND: breach: actions.

II. Was it intended as security for those furnishing labor or material for the construction of the building? It is stipulated in the agreement " that the party of the second part further covenants and agrees to promptly pay for all labor and materials used in and about the building, and to hold and save the said first party harmless from and against all and every demand, or demands of any nature or kind, for and on account of liens for labor and materials, or of the use of any patented invention, article or appliance included in the materials hereby agreed to be furnished under this contract." In no plainer language could the contractor have agreed " to promptly pay for all labor and materials used in and about the building." This cannot be regarded as merely introductory to what follows, as no liens for labor and material

2. SAME.

could in any event be asserted against the municipality, and such a construction would destroy the meaning of the entire paragraph, save the portion relating to patented inventions and the like. Who then were to be paid? Manifestly those furnishing the labor and materials. The provision was for their benefit. No purpose other than this could have been served by the city, for in no event would it have been liable therefor. The evident object was to secure subcontractors to the end that they, knowing " they were secured, would do better work and furnish better material than if they felt uncertain about their pay." As directly in point, see *Baker v. Bryan,* 64 Iowa, 561. Also *Jordan v. Kavanaugh,* 63 Iowa, 152; *Wells v. Kavanagh,* 70 Iowa, 519. In *Green Bay Lumber Co. v. Ind. School Dist. of Odebolt,* 121 Iowa, 663, the contract contained no promise to pay for labor or materials, and for this reason alone liability on the part of the surety was denied.

It is contended, however, that, even if this paragraph be so construed, all liability to subcontractors is obviated by a subsequent provision that " it is the express condition of this contract that no member of said committee, or other person, whose name is not at this time disclosed, shall be admitted to any share of this contract, or to any benefit to arise therefrom; and it is further convenanted and agreed that this contract shall not be assigned." That is, under the construction contended for the parties, after specifically agreeing that payment shall be promptly made for labor and materials, they then stipulated that none other than those named shall derive any benefit therefrom. It seems all but inconceivable that after recognizing that labor and materials must be bought by the contractor, and obligating him to promptly pay therefor, that this paragraph was intended to exclude those furnishing them from " any share of this contract or to any benefit arising therefrom." Just how such a feat, paying without conferring a benefit, may be performed, is not explained. But such is the construction contended

for by the surety company, and, without undertaking to say what the parties did mean, we shall content ourselves with the easier task of determining what they did not mean.

As said, the first paragraph quoted is an absolute promise on the part of the contractor to pay for all labor and materials, but this, if the last paragraph be construed as contended, can be done only on the condition that the labor and materialmen derive no benefit from, or thereby share in, the contract. But this involves an utter impossibility. How could such payment be exacted without benefiting these men? And how were it possible for these men to sell materials and furnish work for the building in furtherance of the contract under a stipulation that the contractor promptly pay therefor without being " admitted to any share of the contract? " If the construction contended for be accepted, the agreement " to promptly pay for all labor and materials used in and about the building " would be absolutely contradictory and inconsistent with the condition that no labor and materialmen " shall be admitted to any share of this contract or to any benefit to arise therefrom," and this result should be avoided for a proviso in a contract totally repugnant to the contract itself is void. *Benjamin v. McConnell*, 4 Gilman 436 (46 Am. Dec. 474); *Rice v. Webster*. 18 Ill. 331.

In the last case it was said: " The condition, therefore, is repugnant to the previous convenant, and must destroy or be destroyed by it. When this is the case, the rule of law is well settled that the condition must give way that the covenant may stand." A rule of construction requires us to so construe each provision as to give it effect, if possible; and, in view of the result of that contended for, we are inclined to reject it as not intended and to hold that some other purpose not disclosed was sought to be attained by inserting the paragraph last quoted.

The bond provides that " if the said Northern Building Company shall well and truly perform all the terms

and conditions of said contract, according to the plans and specifications made part thereof for said Library Building, and fully comply with each and all of the said conditions of said contract, then this bond to be void and of no effect; otherwise in full force and effect, and for the payment of damages of any kind that may result by reason of the failure of said Northern Building Company to comply with the said contract, as aforesaid, according to its strict terms and conditions." The condition, it will be observed, is not limited to the payment of damages suffered by the committee, but broadly includes compliance with all the "terms and conditions of said contract." As the construction we have given both the bond and contract is not doubtful, it is unnecessary to take up the question argued as to whether any favoritism is due to a company organized to act as surety for hire, but see *Getchell v. Peterson,* 124 Iowa, 599, 615, and cases cited. The court did not err in adjudging that failure of the contractors to pay subcontractors furnishing labor and material operated as a breach of the bond and in entering judgments in their favor.

III. The last estimate was made October 27, 1902. Including money then paid, the building company had received $26,584.20, which was 90 per cent. of the estimates made according to the terms of the contract.

3. EQUITABLE assignment: orders.

That company had become indebted to the Commercial National Bank of Ft. Dodge in the sum of $2,400, evidenced by two promissory notes, and desired more. On the 5th day of November its manager, J. E. Nason, arranged with the bank to advance $1,600 additional. The company thereupon executed the following order:

Fort Dodge, Iowa, Nov. 5, 1902.

Carnegie Library Association: Please pay the Commercial National Bank $4,000.00 on completion of Library Building and charge same to our contract account. [Signed] The Northern Building Co., by J. E. Nason, Mgr.

Upon this the treasurer, on presentation indorsed:

November 5, 1903.

After final completion of the Fort Dodge Public Library by the Northern Building Company and acceptance by the Building Committee, I will pay the within order out of the funds in my hands, as treasurer, to the Commercial National Bank instead of the Northern Building Company. [Signed] Webb Vincent, Treasurer Library Building Committee.

At the same time a voucher, in words following, was signed by the building company:

Building Committee Fort Dodge Public Library, to Northern Building Co., Dr. to cash paid on order of Commercial National Bank, the same being a payment on final estimate on completion of the Library Building and its acceptance by the Library Building Committee, $4,000.00.

$4,000.00. Received of Webb Vincent, Treasurer Building Committee of the Fort Dodge Public Library the sum of four thousand dollars, in full of the above account. [Signed] The Northern Building Co., by J. E. Nason.

These several instruments were taken to the bank, the note of $1,600 given, and a credit of that amount entered in favor of the company. The other notes were extended. Upon the completion of the building $2,814.46 remained in the hands of the committee, of which $1,214.27 was ordered paid to subcontractors who had complied with section 3102 of the Code by filing claims with the treasurer of the committee within thirty days after the last item was furnished, and $1,600.27 to the bank. The bank insists that this entire fund should have been paid to the bank, while the surety company, with equal persistency, contends that no part thereof should have been so applied. That an order for the payment of a specific sum out of a fund larger in amount will operate as an equitable assignment thereof *pro tanto* is the settled doctrine of this court. *McWilliams v. Webb*, 32 Iowa, 577; *Schollmier v. Scheondelen*, 78 Iowa,

430; *Foss v. Cobler,* 105 Iowa, 728; *Bloom v. Winthrop State Bank,* 121 Iowa, 101.   See *Bradley v. Root,* 5 Page, 632; *Harris County v. Campbell,* 66 Tex. 22 (3 S. W. 243, 2 Am. St. Rep. 467); *Fourth St. Bank v. Yardley,* 165 U. S. 634 (17 Sup. Ct. 439, 41 L. Ed. 855).   But a non-negotiable order can do no more than transfer the interest the maker then had or might acquire in such a fund; that is, place the payee as to the specific sum in the shoes of the maker.   *Ind. School Dist. v. Mardis,* 106 Iowa, 295; *Fred Muller Brewing Co. v. Hansen,* 104 Iowa, 307; *Thomas v. Exchange Bank,* 99 Iowa, 202.

So we should first look to the terms of the contract between the building company and the committee to ascertain the fund, if any, out of which the order might be paid. That instrument required the completion of the building by January 1, 1902, and further provided:—

That if the said party of the second part shall fail to complete the work herein contracted for, in accordance with this agreement within the time herein provided for, or shall fail to prosecute said work with diligence, as in the judgment of the party of the first part, or their agents, will insure the completion of the work within the time hereinbefore provided, the said party of the first part may withhold all payments for work in place until final completion and acceptance of the same, and is authorized and empowered after eight days' notice thereof in writing, served personally upon or left at the shop, office or usual place of abode of the said party of the second part, or with their agent; the second party having failed to take such notice within the said eight days, as will in the judgment of the said party of the first part, remedy the defect for which said notice was given, to take possession " and complete the building, " and the party of the first part covenants and agrees that payments will be made in the following manner, viz.:   Ninety per cent. of the value of the work executed, and actually in place to the satisfaction of the party of the first part, will be paid from time to time as the work progresses, the said value to be ascertained by the party of the first part, or their agents; and the ten per cent. thereof will be retained until the com-

pletion of the entire work, and the approval and acceptance of the same by the party of the first part, which amount shall be forfeited by the said second party in the event of the nonfulfillment of this contract; it being expressly covenanted and agreed that the said forfeiture shall relieve the party of the second part from liability to the party of the first part for any and all damages sustained by reason of any breach of this contract.

Nothing had been earned by the building company not already paid, save the ten per cent. which the committee retained when the order was given on November 5, 1902. Between that time and January 24, 1903, labor and materials of the estimated value of $1,500 had been furnished. On the latter date the company failed, and the committee, without declaring a forfeiture, completed the building, and accepted it August 15th thereafter. Under the express terms of the contract the committee had the right to " withhold all payments for work in place until final completion and acceptance of the same." The ten per cent, also might be so retained. Manifestly, then, the building company had nothing owing of which it could have made a present transfer. It could only assign that which might become payable, subject to the contingencies recited in the contract with the committee. It was in view of these conditions that the acceptance was drawn stipulating for the payment of the order " to the Commercial National Bank instead of the Northern Building Company . . . after the completion of the Ft. Dodge Public Library by the Northern Building Company and acceptance by the building committee." In other words, the treasurer merely agreed to pay in strict compliance with the contract, save that payment be made to the payee of the order, instead of the contractor. Indeed, the order itself was for the payment " on completion of Library Building." The bank entered the credit to the building company on the order with the acceptance indorsed thereon, and therefore took the order subject to what-

ever conditions the acceptance imposed.  These were pre-
cisely the conditions found in the contract, and the order,
with the acceptance, operated to transfer no more than
might be in the hands of the treasurer to pay upon the com-
pletion and acceptance of the building.  What amount was
then in his hands subject to the order?  Prior to that time
the claims of the subcontractors, which the court ordered to
be paid from the balance in the treasurer's hands, had been
perfected by filing. and giving notice within the statutory
period.  This gave the subcontractors the right of .payment
by the committee " for the value of such services and mate-
rials, not in excess of the contract price."  Section 3102,
Code.  But, as the building company was to pay for all la-
bor and material, these amounts were due from that com-
pany, and no more than the excess of such claims would
have been payable to it.  We think this was all that was
transferred to the bank and that, in view of the situation
of the parties, the clause " I will pay the within order out
of the funds in my hands, as treasurer, to the ·Commercial
National Bank instead of the Northern Building Company,"
meant that the treasurer would. pay the bank whatever
amount was in his hands upon the acceptance of the build-
ing, which would otherwise have been payable to the com-
pany.  Otherwise, payment in excess of the ninety per cent.
stipulated was made and the release of the surety's obligation
to the committee effected.  Otherwise, the committee for
whom the treasurer acted or the city of Ft. Dodge would be
liable on this order.

In construing the order and acceptance, it must be
borne in mind that the parties are to be assumed to have
been familiar with the law relating to the establishment of
labor and material claims.  The president of the bank, who
conducted the negotiations for it, was also chairman of the
committee, and knew that the building had not been com-
pleted, and was advised of the amount still on hand.  His
first duty was to the public the committee served, and what

he did must be construed in the light of that duty. As between two masters he will be assumed to have intended to serve the public rather than his private interests involved in obtaining security for an indebtedness and making additional loans for his bank. On the other hand, the treasurer ought not to be held to have intended to involve himself, the committee, or the city in an obligation not beneficial to any, unless this is required by a fair construction of the acceptance. As said, we think the order and acceptance, when construed together, purported to and did assign to the bank no more than should be found payable to the building company upon the completion and acceptance of the building. This conclusion disposes of other questions raised by the bank not necessary to enumerate.

IV. The contention of the surety company that the transaction with the bank amounted to a payment in excess of the ninety per cent. authorized by the contract, and

4. CONTRACTS: assignment of earnings: release of sureties.

therefore released the surety, is disposed of by what we have already said. The law may be as claimed. See *Finney v. Condon*, 86 Ill. 78; *Prairie State Bank v. U. S.*, 164 U. S. 227 (17 Sup. Ct. 142, 41 L. Ed. 412); *Simonson v. Thori*, 36 Minn. 439 (31 N. W. 861); *Calvert v. London Dock Co.*, 2 Keen, 638, 6 Cyc. 82. But, if so, the transaction with the bank did not constitute a payment prior to the completion and acceptance of the building, nor did it violate the condition in the contract forbidding its assignment. The object of such prohibition was to obviate the substitution of another than the original contractor in carrying out the undertaking. There is an obvious distinction between the assignment of the money or earnings due or to become due under the contract and of the obligation to do the work. The former merely transfers the benefits to be derived from performance by the other party, while the latter transfers the obligation of him who is to execute the task undertaken. As was observed in *Fortunato v. Patten*, 147 N. Y. 227 (41 N. E. 572),

" the latter act disturbs that relation of personal confidence which exists between one desiring work done that requires a high order of skill and intelligence and the contractor he may have selected as possessing these necessary qualifications."   See, also, *Delaware v. Diabold Safe & Lock Co.,* 133 U. S. 473 (10 Sup. Ct. 399, 33 L. Ed. 674); *Norton v. Whitehead,* 84 Cal. 263 (24 Pac. 154, 18 Am. St. Rep. 172).

V. The surety company insists that the reservation of the ten per cent. of work done was for its benefit, as well as that of the committee, and that upon the entry of judgment against it for the payment of claims for labor and materials it acquired the equitable right to subrogation to the fund in the hands of the committee which related back to the date of the contract.   Conceding that payments in excess of ninety per cent. of the work as done could not have been made by the committee without releasing the obligation of the surety to it (but not necessarily to the subcontractors), this was because the contract exacted the retention of the remaining ten per cent. to operate as a pressure on the contractor to complete the undertaking, and was for the benefit of the surety, as well as the committee.   But it was to be retained no longer than the completion and acceptance of the building, and thereupon to be paid.   The effect of the accepted order, as we have seen, was payment at that time.   No fund remained in the hands of the committee thereafter payable to the Northern Building Company, and therefore nothing to which the surety company might be subrogated.   The case differs so radically from those relied on, (*City of Keokuk v. Love,* 31 Iowa, 119, and *Prairie State National Bank v. U. S.,* 164 U. S. 227 (17 Sup. Ct. 142, 41 L. Ed. 412), that comparison seems unnecessary.   The surety cannot complain of any payment made in strict conformity with the terms of the contract, and, as seen, none were made otherwise.

5. SUBROGATION: rights of surety.

VI. The subcontractors were not bound to perfect their claims against the fund in the hands of the treasurer of the committee, but might rely, as several of them did, on the security afforded by the bond. *Whitehouse v. Am. Surety Co.,* 117 Iowa, 328.

6. RIGHTS OF SUB-CONTRACTORS.

VII. The contract stipulated " that the entire work shall be completed before the first day of January, 1902, and that should the said party of the second part fail to complete the entire work, or any part or portion of the work, within the time specified, then the said party of the second part shall forfeit to the said party of the first part ten dollars per diem as liquidated damages for each and every day thereafter until the completion of the same." As pointed out, the committee was acting for the city of Ft. Dodge, and the contract in effect was with it. The bond signed by the surety provided for the " payment of damages of any kind that may result by reason of the failure of said Northern Building Company to comply with said contract." The city, then, was the real party to the contract, and entitled to recover damages, if any, caused by the delay. To establish these it proved, over objection, that between January 1, 1902, and June 1, 1903, it had paid out $232.50 for the use of rooms for library purposes, and that this was the reasonable rental value of the same. But, while this showed the expense incurred by the city, it did not even tend to prove what the rental or actual value of the use of the Library Building would have been during this period, had it been completed. Ordinarily the measure of damages is the rental value during the period of delay. *Brownell v. Chapman,* 84 Iowa, 504; *Novelty Iron Works v. Capital City Oatmeal Co.,* 88 Iowa, 524.

7. CONSTRUCTION OF PUBLIC BUILDING: breach of contract: recovery of damages.

But it is said that a public building such as a City Library has no rental value. While this does not necessarily follow, it is ordinarily true, and in such cases it would seem that evidence of the actual value of its use to the city,

might be shown. Resort to proof of actual worth of property having no market value is permissible. *Gere v. Ins. Co.,* 67 Iowa, 275; *Clements v. Railway Co.,* 74 Iowa, 442; *McMahon v. Dubuque,* 107 Iowa, 62. And we see no reason for not adopting a like rule with respect to the use of property of a character not rentable. In any event, proof of what the city paid as rent for some rooms, without more, even though the reasonable value thereof, had no tendency whatever to establish what the value of the use of the Library Building would have been. As well have proven what a dozen other places in different parts of the city ,would have cost.

In the absence of evidence of damages, the court rightly denied the relief sought by the city. The decree is in all respects approved.— *Affirmed.*