## COX v. NEW ENGLAND EQUITABLE INS. CO.

### In re MOORE & PAYNE.

(Circuit Court of Appeals, Eighth Circuit. November 28, 1917.)

#### No. 4807.

BANKRUPTCY ⚖═345—PRIORITY OF CLAIMS—EQUITABLE LIEN.

A firm of contractors for a government building gave a bond conditioned, as required by statute, to pay all claims for materials and labor. and in order to obtain the surety agreed that, in case of its default, all sums then or thereafter due on its contract should be the property of the surety, to be credited on any indebtedness arising out of the obligation. They completed the building, but left claims for labor and materials unpaid. The government, without knowledge of such claims, made the final payment to the contractors, who paid it on an indebtedness to a bank, from which it was recovered by their trustee in bankruptcy. *Held* that, the fund having been traced and recovered, the surety, which had settled the claims covered by its bond, was entitled to an equitable lien thereon, and to priority of payment over general creditors.

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

In the matter of Moore & Payne, bankrupts. From an order awarding to the New England Equitable Insurance Company priority in a fund recovered by the trustee, Norman Cox, trustee, appeals. Affirmed.

George J. Grayston and A. E. Spencer, both of Joplin, Mo., for appellant.

D. A. Murphy, of Nevada, Mo. (John T. Harding and S. F. Harris, both of Kansas City, Mo., and Hugh Dabbs, of Joplin, Mo., on the brief), for appellee.

Before SMITH and STONE, Circuit Judges.

SMITH, Circuit Judge. In 1912 the government let a contract to Moore & Payne, a copartnership of Missouri, for the construction of a post office building at Bonham, Tex., for $46,145. The contract provided for payments upon the contract as prescribed in the specifications. The specifications provided:

"*Payments.*—Payment of 90 per cent. of the value of the work executed and satisfactorily in place, as ascertained by the supervising architect, acting through the superintendent, will be made monthly, and payment of the 10 per cent. retained will be made after the final acceptance by the duly authorized representative of the Treasury Department of all materials and workmanship embraced in the contract; but payment will not be made until every part of the work to the point for which payment is claimed is satisfactorily supplied and executed in every particular and all defects remedied to the satisfaction of the supervising architect."

Moore & Payne gave a bond in the sum of $23,000, with the appellee as surety, conditioned as required by chapter 778 of the Acts of the

58th Congress, 33 Stat. 811 (section 6923 of the United States Compiled Statutes 1916), as follows:

"Now, if the said Moore & Payne * * * shall promptly make pa,·· ments to all persons supplying labor or materials in the prosecution of the work contemplated by said contract, then this obligation to be void; otherwise, to remain in full force and virtue."

To procure this bond Moore & Payne made application to the appellee and therein stipulated:

"And the undersigned does further agree, in the event of any breach or default of the provisions of the contract or contracts hereinbefore mentioned, that the surety, as surety upon the aforesaid bond or bonds, shall be subrogated to all rights and properties of the undersigned as principal in said contract, and that deferred payments, and any and all moneys and properties that may be due and payable to the undersigned, at the time of such breach or default, or that may thereafter become due and payable to the undersigned on account of said contract or contracts, shall become the property of the surety, to be credited upon any claim that may be made upon the surety under the bond or bonds above mentioned."

The contract was performed by Moore & Payne, but they left persons supplying labor and materials upon the post office wholly unpaid to the amount of about $9,000, which appellee compromised for $8,182.-28. About June 12, 1914, the government made final payment to Moore & Payne to the amount of about $5,345.63. They then owed the Citizens' State Bank of Joplin, Mo., about $8,000. They deposited the money received from the government with it, and checked the same out in small amounts down to about $5,000. They gave a check for $1,000 to the Citizens' State Bank of Joplin, Mo., to apply upon their account. Subsequently the bank credited $4,000 more upon the indebtedness of Moore & Payne, and later the latter gave their check for that amount. On October 3, 1914, Moore & Payne were adjudged bankrupts, and appellant, Norman Cox, was appointed and qualified as trustee. He brought suit against the Citizens' State Bank to recover the sum of $5,000. The petition was in three counts, the first two to recover the amounts of the checks for $1,000 and $4,000 as unlawful preferences. The third count was upon the right of the persons supplying labor and materials and the appellee to be subrogated to the rights of the persons supplying labor and materials against said fund. This resulted in a judgment in favor of the plaintiff upon the first two counts of the petition for $5,175. It is perhaps worthy of notice that the attorneys for Cox, trustee, in that case, were the attorneys for the appellee in this case in the court below, and the attorneys for the Citizens' State Bank in that case were the attorneys for appellant below.

On September 2, 1915, the appellee filed a petition for enforcement of lien priority with the referee, in which it was alleged that subsequent to the trial of the case of Norman Cox, Trustee, v. Citizens' State Bank of Joplin, and for the purpose of avoiding further litigation, he compromised said judgment with the Citizens' State Bank for the sum of $4,500; "that this petitioner in law and equity and good conscience is entitled to said fund by reason of its rights of subroga-

tion, and by reason of its lien thereon existing by virtue of said assignment, executed by the bankrupt, and by virtue of said assignment from said laborers and materialmen." The case was tried before J. C. Ammerman, referee, who denied the petition of the New England Equitable Insurance Company for lien priority, and allowed it the sum of $8,182.28 as a general creditor against the estate. The case was taken before the District Court upon an application for review, where the finding of the referee was reversed, and the fund collected from the Citizens' State Bank of $4,500 was ordered turned over to the appellee, and the trustee in bankruptcy appeals from that decision.

There is no dispute as to the identity of this money in the hands of the trustee with the money derived from the government. The government paid the contractors without the knowledge of the surety upon their bond, and without knowledge upon the part of the government or the surety of the existence of the claims of materialmen and laborers. The contractors deposited the money with the Citizens' State Bank of Joplin. It was sued by the trustee of the contractors, who recovered the fund. It is now contended the bank and other general creditors ought to receive a part of it as against the materialmen and laborers upon the government building and the appellee, who, under a written contract, paid their claims and took assignments of them.

There has been considerable discussion of the question as to when, if ever, the claim of the appellee attached as a lien to the funds, and on the question of subrogation, and as to whether the materialmen and laborers had any lien which would support subrogation, and even as to whether there is a fund in existence. We are of the opinion that the $4,500 now in the hands of the trustee is clearly the identical fund paid by the government to the contractors, and if the appellee had a lien upon it while the government had it, such lien has not been lost, as the fund is fully and accurately traced to the hands of Cox, trustee. So far as the questions of subrogation are concerned, the doctrine on that subject "is not founded on contract, but has its origin in a sense of natural justice." Orem v. Wrightson, 51 Md. 34, 34 Am. Rep. 286; American National Bank v. Fidelity & Deposit Co., 129 Ga. 126, 58 S. E. 867, 12 Ann. Cas. 666.

But we have reached the conclusion that, aside from a specific consideration of any of these questions, except the tracing, existence, and identity of the fund, the surety company is entitled to an equitable lien upon the fund for all sums paid for labor and materials upon the Bonham building. Hardaway v. National Surety Co., 211 U. S. 552, 561, 29 Sup. Ct. 202, 53 L. Ed. 321; Hardaway & Prowell v. National Surety Co., 80 C. C. A. 283, 291, 150 Fed. 465, 473; Henningsen v. U. S. Fidelity & Guaranty Co., 208 U. S. 404, 28 Sup. Ct. 389, 52 L. Ed. 547; Id., 74 C. C. A. 484, 143 Fed. 810; Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; Columbia Digger Co. v. Sparks, 142 C. C. A. 304, 227 Fed. 780; Columbia Digger Co. v. Rector (D. C.) 215 Fed. 618; In re Scofield Co., 131 C. C. A. 353, 215 Fed. 45. See Alfred Richards Brick Co. v. Rothwell, 18 App. D. C. 516; Kiessig v. Allspaugh, 91 Cal. 231, 27 Pac. 655, 13 L.

R. A. 418. Without passing upon the question whether there is any conflict between this holding and that of the Supreme Court of Iowa in Hipwell v. National Surety Co., 130 Iowa, 656, 105 N. W. 318, if there is a conflict, that case could not be followed by this court in view of the great weight of federal authority on the subject.

The decree of the District Court was correct, and it is affirmed.