## BELKNAP HARDWARE & MFG. CO. et al. v. OHIO RIVER CONTRACT CO. et al.

(District Court, W. D. Kentucky. April 6, 1920. On Motion to Dismiss, May 20, 1920.)

On Motion to Substitute Party.

1. **United States ⊜67(3)—Remedy of creditors on government contractor's bond is by action at law.**

The right given one who furnished materials or labor to a government contractor to sue in the name of the United States on the bond of the contractor, under Act Feb. 24, 1905 (Comp. St. § 6923), is to be enforced by an action at law.

2. **Courts ⊜335(1)—State statute regulating amendment of legal actions not applicable to federal equity suits.**

The Kentucky Code regulating proceedings in actions at law, including provisions for amendment of pleadings, is not applicable to a suit by creditors of a government contractor to recover the amount paid by the government to the contractor's receiver and to be subrogated to the claims of sureties on the contractor's bond, which is a purely equitable suit and is governed only by the equity rules.

3. **United States ⊜67(3)—Creditor cannot sue on government contractor's bond until after six months.**

Under Act Feb. 24, 1905 (Comp. St. § 6923), an action brought by one who furnished material or labor to a government contractor on the contractor's bond cannot be begun until the expiration of the six months after the completion of the work allowed for action by the United States on the bond for its own benefit.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. **Limitation of actions ⟨Key⟩127(12)—Amendment of creditors' bill to recover funds from receiver, so as to recover on government contractor's bond, states new cause of action within statute.**

To permit a bill brought by creditors of an insolvent government contractor for materials and labor furnished to recover from the receiver the amount paid the contractor by the government, and to be subrogated to the rights of the sureties on the bond, to be amended by substituting as plaintiff the United States, so as to authorize recovery on the contractor's bond under Act Feb. 24, 1905 (Comp. St. § 6923), states a new cause of action, and will not be allowed after the expiration of the year limited by that statute for commencing actions on the contractor's bond. ·

### On Motions to Dismiss.

5. **United States ⟨Key⟩67(3)—Act of 1894 as to bond to protect materialmen is superseded by act of 1905 fixing time for suit on such bond.**

Act Aug. 13, 1894, requiring government contractors to give a bond conditioned on paying laborers and materialmen, and entitling the latter to sue thereon in the name of the United States, without fixing any limitation for such suit, was entirely superseded by Act Feb. 24, 1905 (Comp. St. § 6923), requiring a similar bond, but authorizing suit by materialmen and laborers thereon only after the expiration of six months from the completion of the work and within one year of such completion.

6. **United States ⟨Key⟩67(1)—No equity against surety after action is barred.**

After the expiration of time within which, under Act Feb. 24, 1905 (Comp. St. § 6923), laborers and materialmen can sue on a contractor's bond, there is no equity against the sureties on the bond in favor of laborers and materialmen which would entitle the latter to preference in payment from a fund in the hands of the receiver of the contractor, as against creditors of the contractor who were also sureties on the bond.

7. **United States ⟨Key⟩67(2)—Liability of surety cannot be extended, except by new written contract.**

The surety on the bond of a government contractor is liable only to the extent specified by statute, not as sureties on the contracts for labor and materials as such, and such liability can be increased or extended only by another contract in writing.

8. **United States ⟨Key⟩67(1)—No equity against surety, where payment would have been obtained by prompt action on bond.**

Where materialmen and laborers, by suing on a government contractor's bond within the time required, could have collected their claims in full from a fund then in the hands of receiver, so that the sureties could have been relieved of all liability, there can be no equity against the sureties after the laborers and materialmen had lost their rights on the bond by failure to sue thereon in time.

In Equity. Suit by the Belknap Hardware & Manufacturing Company and others against the Ohio River Contract Company and others. On motion to substitute the United States as plaintiff for the benefit of plaintiffs. Motion denied. On motions to dismiss. Motions granted.

John B. Baskin, of Louisville, Ky., for plaintiffs.

Helm Bruce, of Louisville, Ky., and O. W. McGinnis and W. M. Wheeler, both of Evansville, Ind., for defendants.

### On Motion to Substitute Party.

WALTER EVANS, District Judge. The act of February 24, 1905 (33 Stats. 811, 7 U. S. Comp. Stats. 1916, § 6923), so far as present purposes require a statement, provides:

---

⟨Key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"That hereafter any person or persons entering into a formal contract with the United States for the construction of any * * * public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction * * * of any * * * public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed pro rata among said interveners. If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the Circuit Court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: Provided, that where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later; and provided further, that where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later. If the recovery on the bond should be inadequate to pay the amounts found due to all of said creditors, judgment shall be given to each creditor pro rata of the amount of the recovery."

[1] In Illinois Surety Co. v. Peeler, 240 U. S. 214, 223, 36 Sup. Ct. 321, 324 (60 L. Ed. 609), the Supreme Court said:

"It is contended that the right given by the statute to the described creditors is of an equitable nature, and that the court erred in permitting recovery at law. * * * The question has not been raised heretofore in this court, but it has been assumed in many cases that the action to be brought under the statute upon the contractor's bond, whether the action were instituted by the United States * * * or by creditors in the name of the United States, was an action at law. * * * In the Circuit and District Courts and the Circuit Courts of Appeals, while it seems that objection has rarely been made, there has been almost complete uniformity in treating the creditors' action under the act of 1905 as one at law."

It seems, therefore, to be clearly established that the actions provided for in the act are actions at law on the bond, and not suits in equity. Nevertheless the plaintiffs (63 in number) on December 12, 1919, jointly brought in their own names, not an action at law on the bond of a contractor executed to the United States, but a suit in equity against a receiver of this court appointed in another action, with whom

they joined as defendants the contractor referred to and the sureties on the bond it had executed. The claims and objects of their suit are clearly set out in the bill, in which it is stated that a contract, variously modified, was entered into between the United States, on the one side, and the Ohio River Contract Company (hereinafter called the Contract Company), and Madison J. Bray and Jacob Eichel, its sureties, on the other, whereby the Contract Company agreed to furnish the necessary material, labor, and appliances to construct lock No. 41 in the Louisville & Portland Canal, adjacent to the Ohio river at the city of Louisville, Ky. The penal sum named in the bond to insure its performance was $255,000, and the contractor and its sureties bound themselves in that sum to the United States. The bond also stipulated that the Contract Company should in all respects duly and fully observe and perform all the covenants, conditions, and agreements made by said contract according to the intent and meaning thereof, as well during any period of extension of said contract that might be granted as during the original term of the same. It stipulated that suit thereon might be brought in the courts of the United States for the district in which the canal was located and in which the contract was to be executed, and that process might be served and notice given in the way provided by the statutes.

The Contract Company failed to complete its work under its contract, and in a separate action by one of its creditors this court appointed a receiver for it, and the work under the contract was fully and satisfactorily completed by him and was accepted by the United States on December 23, 1918. It was then ascertained that a balance of $98,694.64 was due under the contract, and the government then paid that sum to the receiver, who now holds it subject to the orders of this court. The United States never brought any suit on the bond of the Contract Company and has no interest in this action.

The plaintiffs allege in their bill that there were a large number of general creditors of the Contract Company, whose names are set forth. The bill then shows that Madison J. Bray, who was a general creditor, has been adjudicated a bankrupt, that George D. Heilman is his trustee in bankruptcy, and that the Contract Company owed said bankrupt $438,868.23. It also alleges that Jacob Eichel is insolvent, but makes no allegation as to whether or not a trustee has been chosen for his estate. The plaintiffs then conclude their bill as follows:

"The plaintiffs hereby claim that they and all others who furnished labor or materials in the prosecution of the construction of said lock 41 are entitled to the whole of the fund aforesaid in the hands of said receiver, after the payment of the expenses and allowances which may be made by this court, and they further claim that they are entitled to be subrogated, to the exclusion of all other creditors of said Madison J. Bray and Jacob Eichel, against the Ohio River Contract Company and the funds in the hands of the receiver as aforesaid. The claims of the plaintiffs above set forth became due and payable on the ——— day of December, 1915, and plaintiffs demanded payment of the Ohio River Contract Company at that time, which payment said Contract Company refused and still refuses to make.

"Wherefore, plaintiffs pray that the costs and expenses against the fund in the hands of the receiver may be ascertained, and that the receiver may be required to pay into court the balance of said fund, and that the same may be distributed among the plaintiffs and all persons who may have supplied

labor and materials in the prosecution of the work of constructing said lock. Plaintiffs pray that the court may by order provide what notice shall be given to the aforesaid creditors not before this court for the filing of any claims which they may have against the fund aforesaid, and further provide in what time such claims shall be filed herein, also providing what notice shall be published and in what newspaper. And plaintiffs pray for all such proper relief as to equity belongs."

It will be noted that the plaintiffs claim, first, that they are entitled to the whole of the money in the hands of the court's receiver after payment of expenses and allowances; second, that they are entitled to be subrogated, to the exclusion of all other creditors of Madison J. Bray and Jacob Eichel, to the claims of Bray and Eichel against the Contract Company; third, that the receiver be required to pay into court the balance of said fund, that the same may be distributed among the plaintiffs and such other persons as may have supplied labor and material; and, fourth, that they may have all other proper relief as to equity belongs.

It will be observed that there does not appear in the bill a single feature of an ordinary action at law. It will also be observed, while plaintiffs' action was brought on the 12th day of December, 1919, that only 11 days later the period of one year after the completion of the contract on December 23, 1919, expired.

On January 13, 1920, plaintiffs tendered an amended bill joining the United States as a party plaintiff, and thereupon, in writing, moved the court as follows:

"The plaintiffs move the court to substitute the United States of America as plaintiff in this case, for the use and benefit of the plaintiffs, in lieu of the plaintiffs in their own persons."

In addition to those raised by the motion of the plaintiffs to amend, other questions are presented upon the separate motions to dismiss the bill made by George D. Heilman, trustee of Madison J. Bray, and by George L. Mesker, a general creditor.

The grounds for the motion made by Heilman, trustee, are stated to be:

First—That said bill relies upon certain contractual obligations and sets out legal rights and calls for legal and not equitable remedies.

Second—That the bill sets up no lien, priority, or other equity, nor any facts which would create such lien, priority, or equity.

Third—That, as appears by the allegations of said bill, the estate of the Ohio River Contract Company is now under administration in this court in another action pending therein.

Fourth—That the bill does not state facts sufficient to constitute any valid cause of action in equity.

Fifth—That the bill is a suit upon the bond of a contractor for public work for the United States, which bond is copied into said bill, but the bill does not conform to the provisions of an act of Congress governing suits on such bonds, entitled "An act for the protection of persons furnishing material and labor for the construction of public works," approved August 13, 1894, as amended by an act approved February 24, 1905 (7 U. S. Compiled Statutes of 1916, § 6923), in that said bill is not filed in the name of the United States.

The grounds of Mesker's motion, though differently arranged, are practically the same as those stated by Heilman, trustee.

Both sides of the questions thus presented have been elaborately and ably argued, and have, with the authorities cited, received the careful consideration of the court.

[2] As we have seen, the plaintiffs' suit (assuming the averments of the bill to be true) is clearly of equitable cognizance, having, so far as perceivable, none of the characteristics of an action at law. In this situation the Code of Practice of Kentucky, regulating proceedings in actions at law, would seem to be deprived of all applicability, including those pertaining to the amendment of pleadings. Only the broader equity rules now in force are pertinent. But even those, as far as applicable here, only authorize amendments, and not a substitution of an entirely different suit, regardless of the intervening rights of other persons.

[3] In effect, therefore, the matters now under discussion turn upon the general question: Would it be lawful or just to all parties to permit the amendment proposed by the plaintiffs, whereby they would eliminate themselves, and, at the late day of January 13, 1920, more than one year after December 23, 1918, when the work under the contract was completed, bring a new suit in the name of the United States?

The plaintiffs had no right to sue anybody during the first six months after December 23, 1918. Only the United States could sue during that period, as is clearly established by the authority presently to be cited. During the next succeeding six months from June 23, 1919, to December 23, 1919, all suits had to be brought in the name of the obligor in the bond, viz., the United States; but the statute in express terms gives, during that time, to every person described in the bond the right to use the name of the United States as plaintiff for his benefit. The United States was the necessary plaintiff, and in every known case under the act its name has been used as permitted by the statute. Here, however, not only was the proper course of suing at law not pursued, but no action in the name of the United States was brought before December 23, 1919; that date ending the period of one year after completion of the work under the contract. After the termination of that period no action on the bond is permitted by the act.

[4] Does not the reasoning of the Supreme Court in Texas Cement Co. v. McCord, 233 U. S. 157, 34 Sup. Ct. 550, 58 L. Ed. 893, clearly settle the questions here involved? In that case a materialman sued on the bond of the contractor, using the name of the United States as plaintiff for his use and benefit. The suit was brought within six months after the completion of the work, and one question was whether that was permissible under the statute. The court held that the action was prematurely brought, because no one but the United States, suing on its own account, could bring suit on the contractor's bond within six months after the completion of the work. The court also held that, where an original bill was prematurely filed, an inter-

vention after the six months and before the twelve months period had expired was not effectual as such, nor as an original bill, and further that an amended bill, filed more than one year after completion of the work and settlement, if treated as an original bill, was filed too late.

In that case, also, the court, as tersely stated in the syllabi, held, first, that when "the purpose of Congress is stated in such plain terms that there is no uncertainty, and no construction is required, it is unnecessary to inquire into the motives which induced the legislation; the only province of the courts in such a case is to enforce the statute in accordance with its terms"; and, second, that "limitations specified in the statute creating a new liability are a part of the right conferred and compliance therewith is essential to the assertion of the right conferred by the statute."

Conversely, and bearing those two clearly stated propositions in mind, it would seem to be certain that this suit in equity, brought by certain individual creditors of the contractor, not upon the bond, but upon the assertion of equitable rights which they claim to have upon funds in the hands of the receiver of this court in another case, but which, came to him from the United States as the final balance due under the contract made with the Contract Company for work on the canal, cannot now, after the expiration of the statutory period of twelve months be so altered or the bill so amended as to make it for the first time an action in the name of the United States on the contractor's bond as contemplated by the act of 1905. It seems to the court that, to reach any other conclusion, we should have to disregard all of the above-stated rules announced in the case of Texas Cement Co. v. McCord, 233 U. S. 157, 34 Sup. Ct. 550, 58 L. Ed. 893, and allow an action on the bond to be commenced for the first time after twelve months from the completion of the contract, and thus, in effect, amend the act of Congress.

In opposition to this conclusion, however, the complainants' counsel has cited many cases, only three of which need be specially noticed:

In McDonald v. State of Nebraska, 101 Fed. 171, 41 C. C. A. 278, the suit was filed by the treasurer of that state in his official capacity against the receiver of an insolvent national bank to recover money which had been deposited in the bank by the state of Nebraska. The defendant demurred upon the ground that only the state could sue upon the claim. The demurrer having been sustained in the lower court, the plaintiff was allowed to amend by joining the state of Nebraska. The defendant carried the case to the Circuit Court of Appeals, which held, first, that under the practice in Nebraska, as well as under that of the United States, the trial court might permit amendments of the pleadings; and, second, that "the amendment merely substituted the name of the state, who was the real party in interest, for that of her fiscal agent," and affirmed the judgment.

In re Griggs et al., 233 Fed. 243, 147 C. C. A. 249, was an interesting case, but a careful examination of the facts and of the questions involved discloses nothing analogous to this case.

In Missouri, Kansas & Texas R. R. v. Wulf, 226 U. S. 570, 33

Sup. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134, the plaintiff, Wulf, in her own name brought an action against the railway company to recover damages for the death of her son. The trial court permitted the plaintiff to amend her petition so as to sue as his personal repre-sentative. In the Supreme Court it was urged that this was erro-neous, but the court said:

"It seems to us, however, that, aside from the capacity in which the plain-tiff assumed to bring her action, there is no substantial difference between the original and amended petitions. In the former, as in the latter, it was sufficiently averred that the deceased came to his death through injuries suf-fered while he was employed by the defendant railroad company in interstate commerce, that his death resulted from the negligence of the company and by reason of defects in one of its locomotive engines due to its negligence, and that, since the deceased died unmarried and childless, the plaintiff, as his sole surviving parent, was the sole beneficiary of the action."

The court further said:

"It is true that under the federal statute the plaintiff could not, although sole beneficiary, maintain the action except as personal representative"

—referring to a previous decision which had so held, but in which there was no offer to amend; and the court, referring again to that case, said:

"The decision left untouched the question of the propriety of such an amendment as was applied for and allowed in the case before us—an amend-ment that, without in any way modifying or enlarging the facts upon which the action was based, in effect merely indicated the capacity in which the plaintiff was to prosecute the action. The amendment was clearly with-in section 954, Rev. Stat. [Comp. St. § 1591]."

And the court added:

"Nor do we think it was equivalent to the commencement of a new action, so as to render it subject to the two-year limitation prescribed by section 6 of the Employers' Liability Act [Comp. St. § 8662]. The change was in form rather than in substance." .

Further along, at the close of the opinion, the court said that "the amended petition set up no new facts as the ground of action." The judgment of the trial court in allowing the amendment was, upon those grounds affirmed.

These cases approved the action of the lower courts in permitting amendments—a course usually much within their discretion—and it cannot escape attention that this was done largely upon the ground that the changes were matters of form rather than of substance, and because the amendments neither enlarged nor modified nor set up any new facts, but only added the name of the party technically entitled to sue in cases where, in either event, the money to be collected went to the same person, regardless of the capacity in which the plaintiff sued.

Those cases, therefore, when closely analyzed, do not seem to support with much, if any, strength the plaintiffs' claim to amend in this instance, where there would be the addition or substitution of a new plaintiff, viz. the United States, which, while it alone had the right to sue on the Contract Company's bond, has no claim whatever to sue for any of the relief sought by the plaintiffs' bill, even if we as-

sume that the plaintiffs stated a cause of action in their own behalf. Indeed, to permit the amendment offered here would necessarily involve the making of most substantial and radical changes in the entire proceeding, especially as the act of 1905 gives the right to use the name of the United States only in a suit on the bond of the Contract Company within the year. If the amendment is allowed, and the United States is made the plaintiff, its pleading would hardly be sufficient in law until given the aspect of a suit to recover on the bond, which would radically change the facts set up. These things make this case altogether different from the Nebraska case and the Wulf Case, so greatly relied upon by the plaintiffs' counsel.

Differing from either of those cases, this is an independent action in equity, which asserts claims by the plaintiffs of an equitable character upon funds which, though obtained by the receiver in the way indicated as the results of the contract between the United States and the Contract Company, may or may not belong equitably to the plaintiffs to the exclusion of other creditors.

Nor should it be forgotten that up to December 23, 1919, either one of the plaintiffs had a perfect right under the act of 1905 to sue in the name of the United States on the bond of the Contract Company, and any such suit would have inured to the benefit of all who had supplied labor or materials to the Contract Company. It would have drawn to it the fund in the receiver's hands, and in it all questions could have been adjudicated and settled. The right of each and all of the plaintiffs to bring such a suit expired on December 23, 1919, and cannot be extended or enlarged by judicial action, either directly or indirectly. This situation may work a hardship, but the act is plain and explicit, as the Supreme Court has held. 233 U. S. 157, 34 Sup. Ct. 550, 58 L. Ed. 893.

In the very recent case of Miller v. American Bonding Co., 262 Fed. at page 105, —— C. C. A. ——, the Circuit Court of Appeals of the Third Circuit said:

"Miller's action against this surety is not based on any right of action involving a common-law right of trial by jury. It is based solely on the new right of action created by the statute 'upon the terms named.' Texas Cement Co. v. McCord, 233 U. S. 157, 34 Sup. Ct. 550, 58 L. Ed. 893; Illinois Surety Co. v. Peeler, 240 U. S. 214, 217, 36 Sup. Ct. 321, 60 L. Ed. 609. These terms provide for one action for all claimants, after the United States has been satisfied, and one recovery for all, under which distribution is made on the claims proved according as the security is adequate or inadequate. In this scheme of the statute, the necessary implication is that there shall be one trial of the 'one action.' By refusing to submit his claim to trial in the manner and at the time afforded by the statute, without offering to the trial judge any reason or excuse which might have removed him beyond its general terms—as to the possibility of which we express no opinion—Miller waived the right of action which the statute gave him. As the right of action which Miller thus discarded could in no way have been revived and restored to him in the subsequent proceedings, it is not necessary to review those proceedings in search for irregularities involving error."

This language is by no means without bearing on the question here involved. It seems clearly to result that the motion to substitute the United States as plaintiff should be and it is denied.

As we have seen, two of the defendants, viz. Bray's trustee in bankruptcy and Mesker, have separately moved to dismiss the bill, and in this way, also, very important and interesting questions have been presented. For, I believe, the second time in my judicial career I venture to make the suggestion that the parties in interest, in a spirit of compromise, might well endeavor to settle all the questions involved. To give an opportunity for doing this, I postpone an opinion on the motions to dismiss.

## On Motions to Dismiss.

In the opinion delivered in this case on April 6th last we endeavored to make clear several propositions, among which were:

(1) That the bill of complaint attempts to show only a right in the plaintiffs severally to certain equitable relief formulated in their prayer as follows:

"Wherefore plaintiffs pray that the costs and expenses against the fund in the hands of the receiver may be ascertained, and that the receiver may be required to pay into court the balance of said fund, and that the same may be distributed among the plaintiffs and all persons who may have supplied labor and materials in the prosecution of the work of constructing said lock. Plaintiffs pray that the court may by order provide what notice shall be given to the aforesaid creditors not before this court for the filing of any claims which they may have against the fund aforesaid and further provide in what time such claims shall be filed herein; also providing what notice shall be published and in what newspaper. And plaintiffs pray for all such proper relief as to equity belongs."

(2) That this relief was not admissible, inasmuch as the act of 1905 only authorized actions at law on the bond of a contractor, which actions must be in the name of the United States, and must be brought within the periods specified in the act, namely, when brought by the United States on its own account the action must be instituted within six months after the completion of the contract, and when brought in the name of the United States for the benefit of private persons who had supplied labor or materials to the contractor it could only be brought after the expiration of six months after the completion of the work under the contract and within the six months next succeeding; and consequently

(3) That if the latter course is not pursued then claimants lose all benefits designed to be afforded by the bond of the contractors. The consequence of these propositions here must be that creditors of the contractor who had furnished labor and materials to him are now restricted to their legal rights, if any, outside of the stipulations of the bond.

The authorities which appear plainly to establish these propositions were cited in our former opinion and included Texas Cement Co. v. McCord, 233 U. S. 157, 34 Sup. Ct. 550, 58 L. Ed. 893, Illinois Surety Co. v. Peeler, 240 U. S. 214, 223, 36 Sup. Ct. 321, 60 L. Ed. 609, and Miller v. American Bonding Co., 262 Fed. 105, —— C. C. A. ——. Notwithstanding this situation, it is nevertheless very energetically contended in behalf of the plaintiffs that they have an "equity" in the fund belonging to the Ohio River Contract Company (hereinafter called the Contract Company), and which fund is now in the

hands of the receiver of this court in another case. This contention appears to be based mainly upon the ground that two of the creditors of the Contract Company were sureties on the bond it gave to the United States, although the obligations of such sureties would appear to have been exhausted upon grounds stated in the three cases just referred to.

Preliminary to any discussion of these contentions it may be well, even if it be tedious, to set forth the applicable statutory provisions. An act entitled "An act for the protection of persons furnishing materials and labor for the construction of public works" was approved August 13, 1894 (28 Stat. 278), and is as follows:

"That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building or public work, shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor, and furnishing affidavit to the department under the direction of which said work is being, or has been, prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond, upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties and to prosecute the same to final judgment and execution: Provided, that such action and its prosecutions shall involve the United States in no expense.

"Sec. 2. Provided that in such case the court in which such action is brought is authorized to require proper security for costs in case judgment is for the defendant."

An act entitled "An act to amend an act approved August 13, 1894, entitled 'An act for the protection of persons furnishing materials and labor for the construction of public works,'" was approved February 24, 1905 (33 Stat. 811 [Comp. St. § 6923]), and is in this language, viz.:

"That the act entitled 'An act for the protection of persons furnishing materials and labor for the construction of public works,' approved August 13, 1894, is hereby amended so as to read as follows:

"'That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed pro rata among said interveners. If no suit should be brought by

the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the Circuit Court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: Provided, That where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later: And provided further, that where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later. If the recovery on the bond should be inadequate to pay the amounts found due to all of said creditors, judgment shall be given to each creditor pro rata of the amount of the recovery. The surety on said bond may pay into court, for distribution among said claimants and creditors, the full amount of the sureties' liability, to wit, the penalty named in the bonds, less any amount which said surety may have had to pay to the United States by reason of the execution of said bond, and upon so doing the surety will be relieved from further liability: Provided further, that in all suits instituted under the provisions of this act such personal notice of the pendency of such suits, informing them of their right to intervene as the court may order, shall be given to all known creditors, and in addition thereto notice of publication in some newspaper of general circulation, published in the state or town where the contract is being performed, for at least three successive weeks, the last publication to be at least three months before the time limited therefor.'"

This legislation has been before the courts in many cases, only two of which, in connection with others already cited, need be noticed at this point. In Mankin v. Ludowici-Celadon Co., 215 U. S. 533, 30 Sup. Ct. 174, 54 L. Ed. 315, which was brought in the name of the United States for the benefit of the defendant in error, the obvious fact was noted in the opinion at page 538 that—

"In respect to the condition of the bond required to be given, the language of the amended act is precisely the same as that contained in the act of August 13, 1894, and the condition is that 'such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract.'"

It will be noticed also that the act of 1894 authorized, if, indeed, it did not require, the bringing of actions on the bond in the name of the United States, but in that act there was no preference given the United States, and in the case last named it was noted in the opinion (215 U. S. 538, 30 Sup. Ct. 176, 54 L. Ed. 315) that in the new act a single action was provided for. Other conditions were also pointed out.

In Texas Cement Co. v. McCord, 233 U. S. 157, 162, 163, 34 Sup. Ct. 550, 552 (58 L. Ed. 893), the opinion of the court, delivered by Mr. Justice Day, used this explicit language:

"By this statute a right of action upon the bond is created in favor of certain creditors of the contractor. The cause of action did not exist before and is the creature of the statute. The act does not place a limitation upon a cause of action theretofore existing, but creates a new one upon the terms named in the statute. The right of action given to creditors is specifically conditioned upon the fact that no suit shall be brought by the United States within the six months named, for it is only in that event that the creditors shall have a right of action and may bring a suit in the manner provided. The statute thus creates a new liability and gives a special remedy for it, and upon well settled principles the limitations upon such liability become a part of the right conferred and compliance with them is made essential to the assertion and benefit of the liability itself. Pollard v. Bailey, 20 Wall. 520, 526, 527; Bank v. Francklyn, 120 U. S. 747, 756; Globe Newspaper Co. v. Walker, 210 U. S. 356; United States v. Boomer, 183 Fed. 726 (Circuit Court of Appeals for the Eighth Circuit).

"The purpose of Congress to give the United States the exclusive right to bring suit within six months is stated in terms too plain to be mistaken or to require construction, because of any possible uncertainty in their meaning. When this is so it becomes unnecessary to inquire into the reasons which induced the legislation. It may be that Congress wished to give the government six months in which to test the work and fully ascertain its character and whether it fulfilled the contract or not. Whatever the motive, the language used clearly expresses the legislative intention and admits of no doubt as to its meaning. This being so, it is only the province of the courts to enforce the statute in accordance with its terms. Lake County v. Rollins, 130 U. S. 662, 670; United States v. Lexington Mill Co., 232 U. S. 399, 409."

And as shown in our former opinion, the Circuit Court of Appeals of the Third Circuit, in the very recent case of Miller v. American Bonding Co., 262 Fed. at page 105, —— C. C. A. ——, said:

"Miller's action against this surety is not based on any right of action involving a common law right of trial by jury. It is based solely on the new right of action created by the statute 'upon the terms named.' Texas Cement Co. v. McCord, 233 U. S. 157, 34 Sup. Ct. 550, 58 L. Ed. 893; Illinois Surety Co. v. Peeler, 240 U.·S. 214, 217, 36 Sup. Ct. 321, 60 L. Ed. 609. These terms provide for one action for all claimants, after the United States has been satisfied, and one recovery for all, under which distribution is made on the claims proved according as the security is adequate or inadequate. In this scheme of the statute, the necessary implication is, that there shall be one trial of the 'one action.' By refusing to submit his claim to trial in the manner and at the time afforded by the statute, without offering to the trial judge any reason or excuse which might have removed him beyond its general terms —as to the possibility of which we express no opinion—Miller waived the right of action which the statute gave him. As the right of action which Miller thus discarded could in no way have been revived and restored to him in the subsequent proceedings, it is not necessary to review those proceedings in search for irregularities involving error."

[5] We find it impossible to doubt that the act of 1905, which covered the entire subject, was intended altogether to supersede, and that it did supersede, the act of 1894.

The argument for the plaintiffs seems to be based (indeed, we cannot doubt that it is based) upon the idea that the act of 1894 yet has force, and consequently that any equity which might have been invoked under its provisions is available for the plaintiffs now, and accordingly many cases have been cited by the plaintiffs, notably In re P. McGarry & Sons, 240 Fed. 400, 153 C. C. A. 326, Hardaway & Powell v. National Surety Co., 150 Fed. 465, 473, 80 C. C. A. 283, and Cox v. New England, etc., Co., 247 Fed. 955, 160 C. C. A. 655.

Nevertheless we think plaintiffs' contention is not supported by them, and in any event it is overborne by the construction put upon the act of 1905 in the cases we have cited.

[6] The ruling of the Supreme Court in Texas Cement Co. v. McCord necessarily means that no enforceable obligation now rests upon the principal in the Contract Company's bond, in view of the failure of laborers and materialmen to sue thereon on or before December 23, 1919. That bond thereby became functus officio. This being true, the liability of the principal in the bond terminated, with the result that all liability of the sureties necessarily ceased at the same time. The liability of the sureties cannot be reinstated in any such indirect way as that contended for by the plaintiffs' counsel, nor can such past and gone obligation of the sureties on the bond be the basis of any "equity" or any right of subrogation such as is now contended for. To hold otherwise would involve, not only a total disregard of the general equitable rights of sureties, but would practically require a reversal of the clear and explicit ruling of the Supreme Court in Texas Cement Co. v. McCord.

[7] We speak now of the obligation of the principal and sureties on the bond of the contractor. We express no opinion as to any other obligation, express or implied, of the Contract Company to its employés, or to those who sold it materials. Doubtless as to each of the plaintiffs there may have been an original contract of employment or of sale made by each with the Contract Company, but the sureties on the bond evidently were not sureties on those contracts as such, if made. The liability of the sureties was only such as the stipulations of the bond expressly provided for, and that liability of the sureties could not be increased or extended, except by another contract in writing.

[8] Furthermore, it is a most important matter to remember that, if any one or more of the plaintiffs had, on or before December 23d last, sued on the bond, each one of the plaintiffs inevitably would have collected every cent of what was due him, and in this way would have entirely relieved the sureties of all liability on the bond. It was their duty to the sureties to do this. That such would have been the result is obvious, as the receiver of the court had in his hands for the Contract Company an available fund ample for the payment in full of all claims of all the plaintiffs. The failure of the plaintiffs to thus avail themselves of the plain remedy provided by the statute necessarily greatly increased the risk of the sureties, by abandoning a fund which would have satisfied all the claims covered by the bond. General principles of equity would seem to be controlling, even if we could forget the ruling in the Texas Cement Co. Case. We are unable, therefore, to see how the plaintiffs are entitled to any right, equitable or otherwise, to further charge the sureties, or to work out through them any benefit in the way of subrogation or otherwise.

We therefore conclude:

(1) That only one remedy is given by the statute to claimants for labor and materials furnished to contractors, namely, that on the bond

as provided for by the act of 1905. This conclusion is plainly sustained by the cases we have cited.

(2) That the plaintiffs have failed to make that remedy available.

(3) The plaintiffs in writing filed moved the court to transfer this action to the law side of its docket, but also in writing at a later period and by the court's order thereon explicitly withdrew that motion, and expressly thereafter insisted only upon a claim that they had an equity in the fund sought to be subjected.

(4) There are 63 plaintiffs, each of which asserts a separate and independent claim upon a specific indebtedness—a plain legal demand —and only 5 of the 63 claims exceed in amount the sum of $3,000 each. No equity is shown by the bill, but we waive all consideration of section 267 of the Judicial Code, which forbids suits in equity where the remedy at law is plain, adequate, and complete.

(5) No diversity of citizenship is shown by the bill or its averments.

(6) An "equity" in the fund is claimed, but no equitable right thereto has been made apparent, and certainly not by the cases cited in plaintiffs' behalf, each and all of which are based upon statutory provisions having no application or control since the act of 1905 was construed by the Supreme Court.

(7) Bray is an adjudicated bankrupt, who, it is admitted, has been discharged. The Contract Company is not before the court for obvious reasons. It is not a citizen or resident of Kentucky. There was no service of process upon it. The United States is not a party, as required by the act of 1905, and there is no provision for service of process upon the clerk of the court, except where there is a suit in the name of the United States upon the bond; but that it is a suit on the bond was throughout disclaimed by the plaintiffs.

The judgment of the court must be that the bill be dismissed, such action including the defendant Bray, a discharged bankrupt, and the Ohio River Contract Company, not before the court. No available remedy for the plaintiffs against either of the two last-named defendants being perceivable, no substantial injury can come to any of the plaintiffs by dismissing this action as against these defendants also, if done without prejudice.

The decree of the court will therefore be that this action be dismissed as against all of the defendants, but that the dismissal as to Madison J. Bray and the Ohio River Contract Company shall be without prejudice to the rights of the plaintiffs, or any of them, to bring any other action about the matters herein involved, if so advised.

It seems to the court well, also, that an order now be entered, revoking and setting aside the order entered on December 10, 1919, in case No. 29 on the equity docket of this court of Belknap Hardware & Manufacturing Co. v. Ohio River Contract Company, permitting suit to be brought against Charles B. Enlow, receiver, appointed in that case; but this revocation of that order will be subject to any rights of the plaintiffs to include said receiver in any appellate proceedings upon the decree now to be entered in this cause.

A decree accordingly will be prepared, costs to be awarded the defendants, except the Ohio River Contract Company.