## MASSACHUSETTS BONDING & INS. CO. v. CHOUTEAU TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. April 7, 1920.)

No. 5456.

1. **Municipal corporations** ⊚═347(2)—**Surety on contractor's bond not liable for nonlienable items.**

The ordinary bond given by a public improvement contractor to indemnify the city against lienable items, which would otherwise become a charge against its property, would not ordinarily render the surety liable for claims not lienable.

2. **Principal and surety** ⊚═175—**Assignment to surety not effective, where conditions precedent never existed.**

An assignment by a contractor to its surety of all deferred payments and retained percentages and moneys and properties due or thereafter becoming due never became a subsisting assignment, where the conditions precedent upon which it was predicated never existed.

3. **Subrogation** ⊚═36—**Rights of contractor's surety inferior to those of one advancing money to its knowledge.**

Where a contractor's surety knew that a trust company was financing the enterprise by loaning money to the contractor during the progress of the work, the trust company's equity to be reimbursed for its advancements, with legal interest, was paramount to that of the surety.

4. **Usury** ⊚═26—**Sale of tax bills at discount not usurious.**

A sale in good faith of tax bills for a public improvement at 10 per cent. discount was not usurious.

5. **Subrogation** ⊚═36—**Payment to principal to prejudice of surety held to render party liable to surety.**

Where the funds due a public improvement contractor were insufficient to pay claims arising from the performance of the work and the contractor's surety had been or would be compelled to pay claims for labor and material, a trust company which made advances to the contractor and took assignments of the tax bills was liable to the surety to the extent of the amount in excess of its claims paid to the principal and not applied on claims for which surety was liable where the trust company had knowledge of the surety's claim.

6. **Subrogation** ⊚═7(1)—**Surety subrogated to creditor's rights.**

A public improvement contractor's surety, compelled to pay claims for labor and materials, is subrogated, not merely to the rights of the contractor in the fund due under the contract, but to the rights which the creditor might have asserted.

7. **Appeal and error** ⊚═1106(4)—**Case remanded for further hearing, where facts not fully developed.**

In an action by a contractor's surety against one making advances to the contractor and taking assignments of the tax bills, where the court found for defendant at the conclusion of complainant's case but the Circuit Court of Appeals held defendant liable to the extent of the amount paid the principal with knowledge of the surety's claims, case *held* to be remanded for a fuller hearing, as the summary disposition of the case had precluded such development of the facts as would enable the court to render a just decree.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit by the Massachusetts Bonding & Insurance Company against the Chouteau Trust Company. From a decree for defendant, complainant appeals. Remanded for fuller hearing.

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

D. A. Murphy, of Kansas City, Mo., and Walter H. Saunders, of St. Louis, Mo. (Harding, Deatherage, Murphy & Stinson, of Kansas City, Mo., and Leahy & Saunders, of St. Louis, Mo., on the brief), for appellant.

John T. Hicks, of St. Louis, Mo. (Cornwell, Hicks & Gary, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

VAN VALKENBURGH, District Judge. This is a suit in equity, brought to enforce an alleged right of equitable subrogation and for accounting and recovery thereunder. The case involves a claim by the appellant, as surety upon the bond of the Cooney-Garland Company, contractor with the city of St. Louis to construct and complete what is known as the Russell Place joint district sewer, upon certain tax bills issued by the city for that improvement and assigned by the contractor and delivered to the appellee. The funds accruing to the contractor were insufficient to pay the claims arising from the performance of that work, and the appellant claims by virtue of an alleged assignment to it of said tax bills and any other money or property coming to the contractor, embraced within a certain agreement of indemnity accompanying the application for bond, and by virtue also of its equitable right of subrogation to the claims for labor and material entering into the work which it has been or may be compelled to pay under its bond to the city, and by virtue of the lien flowing from its said equitable right.

The various claims against the contractor are of several classes. For labor and materials furnished, for notes and other obligations arising out of such labor and material claims, for salaries and fees, and for money advanced mainly by the appellee during the prosecution of the work. Not all of them, in their present form, nor in the form into which some of them had been converted at the time of their payment, were lienable in their nature. All claims paid, however, whether by appellee or by the principal in the bond, accrued in the performance of the contract, and were subsisting charges against the contractor itself. This was the consideration which actuated the court below in reaching its conclusion. It found for the appellee, respondent below, at the conclusion of complainant's case, and entered judgment accordingly.

[1] The contractor's bond in question is provided, in the scheme of public improvement of the city, to take the place of the statutory liens of laborers and materialmen under the lien laws of the state. The bond is not set out in the record, but by common consent it is understood to be the ordinary bond given in such cases, which undertakes to indemnify the city against any lienable items which would otherwise become a charge against its property. The appellant, therefore, would not ordinarily be liable for any claims against the contractor, although incurred in the performance of the contract, which are not of this nature.

The appellee, at the conclusion of the work, to wit, on August 3 or 4, 1917, received from the city the full amount of tax bills issued in payment for the work done, for which allowance was made by the city engineer, who was, by contract, made the final arbiter of such allowances. No contention is made here that the engineer acted arbitrarily and without authority in exercising this power. That question is accordingly removed from our consideration. The claim of the appellee to the bills is twofold. It is founded upon an assignment thereof by the contractor in consideration of advancements made by way of loans during the progress of the work, and upon an alleged agreement to sell, and a sale, of all bills to be issued, at a 10 per cent. discount, or at 90 cents on the dollar of their face value. The latter agreement was, of course, executory, and unsupported by any consideration of money advanced upon the purchase price, as distinguished from advancements made by way of loan prior to the issuance of the tax bills by the city. This alleged agreement of purchase at 90 cents on the dollar is assailed by appellant as a subterfuge. Appellant claims that the transaction was in the nature of a loan, that the 10 per cent. discount was in the nature of interest, and that the amounts exacted by appellee were usurious, and invalidated its claim to the tax bills as security.

The appellant claims that through its agent, Lamb, and by letter of July 16, 1917, addressed to all parties in interest, as well as by statements made on August 3 or 4, 1917, on one of which latter dates the tax bills were delivered to appellee and the final purchase price paid, it advised all parties, including appellee, that the proceeds of the contract, as evidenced by the tax bills, would be insufficient to pay all claims against the contractor; that it had an equity therein by reason of its position as surety. In the letter of July 16th, heretofore mentioned, it notified all parties that final payment to the contractor should be withheld, until such time as appellant's agent gave notice that "the proper arrangements have been perfected for the distribution of the same." Counsel for appellee deny that appellee received any effective notice of an asserted superior claim on the part of appellant, and that appellant, in fact, has any such claim. Upon receiving the tax bills appellee deducted the amount due it for loans, with interest at 6 per cent., and turned the balance of the purchase money over to the contractor. From the face of the tax bills it deducted the 10 per cent. discount agreed upon. It practically directed the payment of two claims, which were apparently lienable, and, if so, a charge under the bond, and a part, at least, of the balance was paid out by the contractor upon claims that would appear from this record not to have been a charge under the bond.

Appellant claims not only that it had a prior lien for its security upon all the tax bills by virtue of the alleged assignment to it, and a further equitable claim as surety by virtue of its notice given, which was effective to impound all funds in the hands either of the city or of appellee against delivery to its principal, the contracting firm. The practical operation of this doctrine would be that all funds in the hands of the city, or of appellee, not subject to claims prior to those

of the bondsman, were subject to such application as would relieve the bondsman to that extent. These funds, in the nature of these proceedings, were in the form of tax bills. Consequently, appellant looks to the tax bills as it would have looked to the money, if the final payment for the work had been in money. It makes no claim, of course, against the city, but only against the appellee, which received the tax bills, and turned the net proceeds over to the contractor, the principal in the bond.

We are of opinion, from the evidence, that appellant cannot hold by virtue of the alleged assignment in the agreement for indemnity accompanying the contractor's application for bond. The provision relied upon is in the following language:

"The applicants hereby further assign, transfer, set over, and convey to said company [appellant] all of the deferred payments and retained percentages, and any and all moneys and properties that may be or herefter become due and payable to the applicants at the time of any breach or default in the contract, or cessation of work thereunder, or that may thereafter at any time become due and payable to them on account of said contract, or on account of any extra work performed or materials furnished in connection therewith."

[2-4] The conditions precedent upon which that assignment was predicated never existed, and the assignment, therefore, never became a subsisting one. We are of opinion, further, that the testimony and evidence, including the letter of July 16th, sufficiently indicates that the appellant knew that the appellee was financing this enterprise— that is to say, loaning money to the contractor during the progress of the work—and therefore that appellee was entitled to be reimbursed for its advancements, together with legal interest, as an equity paramount to that of the surety. It is further our opinion that the charge of usury made by appellant is not sustained, but, on the contrary, that appellee had in good faith contracted to buy these tax bills at 90 cents on the dollar, which accounts for the 10 per cent. discount, which appellant seeks to have considered as an interest charge of a usurious nature.

[5] From the proceeds of the tax bills there is a balance of something like $9,000 to be accounted for in excess of all claims of appellee, and if this was disbursed without authority, and in a manner prejudicial to the security of appellant, then, under the decision of this court in Cox v. New England Equitable Insurance Co., 247 Fed. 955, 160 C. C. A. 655, and under the decisions of the Supreme Court of the United States in Prairie State Bank v. United States, 164 U. S. 227–239, 17 Sup. Ct. 142, 41 L. Ed. 412, and Hardaway v. National Surety Co., 211 U. S. 552, 29 Sup. Ct. 202, 53 L. Ed. 321, a recovery may be had against appellee, against which disbursement to the principal would be no defense, provided appellee had prior notice of the surety's claim. We think that the facts disclosed in the testimony of the witnesses for appellant, as well as the letter of July 16th, properly construed, of all which appellee had knowledge before it made the disbursements over and above its legitimate claims, were sufficient to charge it with notice and knowledge of the claim of the surety. It is probable, however, that appellee could not be held for

any disbursements for which the surety would have been liable, and which, therefore, lessened the obligation of the surety in accordance with the terms of its bond. In Prairie State Bank v. United States, supra, it is said:

"Equitably, therefore, the sureties in such cases are entitled to have the sum agreed upon held as a fund out of which they may be indemnified, and if the principal releases it without their consent it discharges them from their undertaking. The principle is the withdrawal of the fund agreed upon as security for the performance of the contract without his consent is a prejudice to the surety or guarantor. Sureties and guarantors are not to be made liable beyond the express terms of their engagements. They have the right to prescribe the terms and conditions on which they will assume responsibility, and neither of the principals can change those terms without the consent of the sureties."

Here it would seem, not only that the principal paid out money to the prejudice of the surety, but that the appellee put it in the power of the principal so to do by disbursing to it the net balance of the purchase price with sufficient notice of a potential claim of the surety. It is further held in Prairie State Bank v. United States that:

"Sundberg & Co. [the principal] could not transfer to the bank any greater rights in the fund than they themselves possessed. Their rights were subordinate to those of the United States and the sureties. Depending, therefore, solely upon rights claimed to have been derived in February, 1890, by express contract with Sundberg & Co., it necessarily results that the equity, if any, acquired by the Prairie Bank in the 10 per cent. fund then in existence and thereafter to arise was subordinate to the equity which had, in May, 1888, arisen in favor of the surety Hitchcock."

The latter date is the date of the bond, and in that case the right of the surety is said to attach as from that date, and not from the date or dates on which he was compelled to pay out money on account of his contract of indemnity. This right could not be displaced by the appellee simply under its contract of purchase with the Cooney-Garland Company, so far as the balance of purchase money is concerned, which was turned over to the contractor by appellee after appellee was put upon notice of the probable claim of appellant. The fund was then still in its hands, and its duty was to retain it until the respective rights of surety and principal could be ascertained.

[6] It has been suggested that appellant was subrogated only to the right of the contractor; but this view is erroneous. The contention is met by the Supreme Court in Prairie State Bank v. United States, supra, in the following language:

"A great deal of confusion has arisen in the case by treating Hitchcock as subrogated merely 'in the rights of Sundberg & Co.' in the fund which, in effect, was saying that he was subrogated to no rights whatever. Hitchcock's right of subrogation, when it became capable of enforcement, was a right to resort to the securities and remedies which the creditor * * * was capable of asserting against its debtor, Sundberg & Co., had the security not satisfied the obligation of the contractors, and one of such remedies was the right based upon the original contract to appropriate the ten per cent. retained in its hands."

In this case the tax bills remained ultimately in the hands of the appellee.

[7] Inasmuch, however, as the summary disposition of the case by the court precluded a full consideration of all the items in dispute, and their status, to such extent as would enable this court to render a just decree in the premises, because, further, appellee in its answer asserts that appellant knew, not only of its advances, but of its agreement to buy the bonds and pay the contractor therefor at 90 cents on the dollar; that by its acts and its failure to assert its rights seasonably the appellant waived whatever priority it had, and is estopped now from asserting a superior equity, upon all of which allegations appellee has not been heard, we believe it would be more equitable and satisfactory that the cause should be remanded to the District Court for a fuller hearing in accordance with the views indicated in this opinion; and it is accordingly so ordered.